UNITED STATES DISTRICT COURT
IN THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| United States of America, ex Rel; Mario Humberto Figueroa; and Elmer Arnulfo Figueroa, <br><br> Plaintiffs, <br><br> v. <br><br> Covan World-wide Moving, Inc.; and Coleman American Moving Services, Inc. <br><br> Defendants. | CA No. 3:12-CV-1144-JFA <br><br> ORDER ON DISCOVERY RELATED MOTIONS |

This matter came before the Court on October 20, 2014, for a hearing on several interrelated motions regarding discovery in this action.

### Defendants' Motion for Protective Order
### Regarding the Deposition of Ken Driggers (ECF No. 137)

During an August 29, 2014, deposition of Ken Driggers, regional manager of Coleman World Group, Plaintiffs presented Driggers with Plaintiffs' Exhibits 16 and 17, documents that were disclosed in Defendants' document production dated July 14, 2014.

Defendants immediately put Plaintiffs on notice that the documents were inadvertently disclosed, claimed protection under the attorney-client privilege and/or work product doctrine, and requested that all copies of Exhibits 16 and 17 in Plaintiffs' possession be immediately returned or destroyed.

1

Central to Defendants' argument is the contention that the disputed emails contained communications among corporate defendants' employees made at the direction of Defendants' trial counsel to gather information to aid counsel in providing legal services. The court is constrained to deny the motion to require the documents be returned. As will be seen below, the Court has concluded that Defendants should be required to produce factual information relating to internal audits and reweighs, and the disputed documents fall into the category of documents that the Court would otherwise require to be produced.

Moreover, as Plaintiffs point out in their memorandum, the emails in question fail to support any suggestion that their disclosure invades counsels' mental impressions, essentially because the emails themselves are void of any real communication and merely evidence the electronic transmission of a shipping file from one non-lawyer employee to another. The entirety of the email text simply states, "Scanned document attached from 67–Augusta, GA." Because the Court is contemporaneously herewith ordering the disclosure of reweighs and audits, and because the email attached to the reweighs disclosed in Exhibits 16 and 17 contain no information whatsoever, the Court denies the motion for a return of the documents. (ECF No. 137).

### Plaintiffs' Motion for Plenary Hearing on Abuse of Privilege (ECF No. 143)

In this motion, Plaintiffs seek a plenary hearing at which the Court would hear testimony and argument concerning Defendants' invocation of the attorney-client and work product privileges. Plaintiffs assert that Defendants have abused these privileges to conceal

critical documentary evidence and justify improper instructions to key witnesses, so that they give incomplete or evasive testimony.

The Court is not persuaded that a plenary hearing is necessary at this point. As will be seen below, the Court is requiring Defendants to produce a substantial amount of information Plaintiffs have requested in their motion to compel discovery, and for this reason, no plenary hearing is necessary. Accordingly, the motion is denied (ECF No. 143).

### Plaintiff's Motion to Compel Responses to Plaintiffs' Second Requests for Production and First Set of Interrogatories (ECF No. 124)

This motion can be divided into two parts. Plaintiffs initially sought discovery of "documents sufficient to show all dividend payments to corporate shareholders for the last ten years." At the commencement of the hearing, Plaintiffs announced that they would withdraw this portion of their motion to compel discovery. That portion of the motion is, therefore, moot.

The remainder of Plaintiffs' motion seeks *inter alia* "all documents concerning warehouse shipment audits or reweighs conducted by [Defendants] since 2004."

In order to put the motion in perspective, it is necessary to set out the basic claims asserted by the Plaintiffs in this action. Defendants, Covan Worldwide Moving, Inc. ("Covan") and Coleman American Moving Services, Inc. ("Coleman") both have contracts with the United States Government to move the household belongings of American Service personnel from one military base to another or, alternatively, to a long term storage facility[1]

---

[1] These facilities are denominated in military speak as "non temporary" facilities.

while the Service man or woman is deployed overseas.  Defendants charge the United States for these shipments under a well established system that factors in, among other things, the weight of the goods being transported.

In this case, the two *qui tam* relators, Mario Humberto Figueroa and Elmer Arnulfo Figueroa, both former employees of the Defendants, came forward with information to suggest that the Defendants were improperly inflating the weight of the shipments (a term generally referred to as "weight bumping"), thereby resulting in false claims being submitted to the United States Government.  Accordingly, the Relators filed this action pursuant to the provisions of the Federal False Claims Act, 31 U.S.C. § 729.  In due course, the United States Government joined in the action, and discovery disputes have persisted in this litigation since its commencement on April 30, 2012.

It was revealed at an earlier hearing that for shipments which already have been completed and the belongings unpacked, it is impossible to reconstruct the weight of the shipments, thereby making Plaintiffs' proof much more difficult.  For this reason, a critical component of the case involves reweighs and audits performed by the Defendants over various periods of time, primarily involving the long term storage facilities.

In a hearing conducted on July 24, 2014, the Court was faced with Plaintiffs' request to obtain data relating to the reweighs conducted at the Defendants' Fayetteville, North Carolina facility.  Defendants resisted production of this information, contending that the reweighs at issue were done at the direction of Defendants' trial counsel, and the results thus

constituted information protected under the attorney-client privilege or, alternatively, the work product doctrine.

At the July 24, 2014, hearing, the Court disagreed with the Defendants, in part, and required that the facts revealed by the reweighs be disclosed, but that all other communications regarding the reweighs not be disclosed because they were protected under the attorney-client privilege.

Since the July 24 hearing, additional reweighs and audits[2] have been revealed and the parties have returned to this Court, taking essentially the same positions that they did in July. That is to say, Plaintiffs are not content with the weight measurements revealed by the reweighs, but seek, in addition, "a description of who participated, what was done, where the audit(s) occurred, when the audit(s) occurred, why they were conducted." (First Interrog. 1–25). Moreover, Plaintiffs asked Defendants to "identify all documents or reports produced pursuant to any audit identified in Interrogatory 1–25" and to "describe any corrective action taken as a result of any audit identified in Interrogatory 1–25." (Interrog. 1–26, 1–27).

Defendants have again responded by objecting to the production of any responsive documents, citing the work product doctrine and the attorney-client privilege.

The Court's position with regard to the additional internal audits and reweighs remains the same. That is to say, the Court will require production of the weight measurements produced by the reweighs, but will reject Plaintiffs' efforts to obtain other

---

[2] The privilege log provided by defendants lists reweighs at Augusta, Georgia and Hawaii, but this order applies to all reweighs conducted since 2004.

information, such as reports and the like, generated internally as a result of the reweighs.[3] The Court's reasoning is as follows: First, as the Court determined in July, Defendants have waived the privilege as to reweighs. Specifically, one of the reweighs relating to six shipments in long term storage at Fayetteville, North Carolina location resulted in the Defendants writing to the Government, confessing error, and providing a refund of overpayments relating to those six shipments.

It is well established that a party cannot selectively waive a privilege. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("selective disclosure for tactical purposes waives the privilege"); *United States ex rel. Mayman v. martin Marietta Corp.*, 886 F.Supp. 1243, 1252 (D.Md. 1995). To do so would be to improperly allow a litigant to cherry pick what information is disclosed: revealing only that which is favorable and claiming the attorney-client privilege for that which is unfavorable. Courts have repeatedly rejected such efforts. *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981) (rejecting selective waiver because it "allows a party to manipulate use of the privilege throgh selective assertion"); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2nd Cir. 1993) ("selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage"). Therefore, the voluntary refund

---

[3] All reweigh measurements produced by the parties pursuant to this order must contain the following information: (1) Name of the Account, (2) Date of the Initial Weigh, (3) Weight of Initial Weigh, (4) Date of Reweigh, and (5) Weight of Reweigh.

paid by the Defendants for the six Fayetteville shipments operates as a waiver of the privilege on *all* reweighs.

Defendants strenuously argue that no waiver has occurred and that all reweighs and audits were performed at the direction of counsel and therefore should be protected. The Court disagrees. It is clear that in *Upjohn Co. v. United States*, 449 U.S. 383, 394 (U.S. 1981) the United States Supreme Court held that the attorney-client privilege extends to communications made by a corporate client's employees to a corporate client's counsel in response to a request from corporate counsel for an internal investigation. Significantly, however, for the matter before this Court, in *Upjohn*, the Court stressed that "the *communications* concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Id*.

This Court is of the opinion that the weight measurements revealed by the reweighs do not involve "communications" either by or to corporate counsel. Instead, they reveal immutable facts that should not be protected by the privilege. As one scholar has observed, "The client cannot immunize a <u>fact</u> from discovery . . . by communicating it to his attorney." Weissenberger, *Federal Rules of Evidence: Rules, Legislative History, Commentary, and Authority* at 210 (2001) (emphasis added). Moreover, it is elementary that the rationale behind most non-constitutional testimonial privileges is the protection of certain confidential relationships. In the attorney-client arena, the law seeks to foster a free and open exchange between attorney and client, so that the client will be entirely forthcoming with counsel,

7

secure in the knowledge that confidences and other information revealed will not be disclosed. *Chase Manhattan Bank v. Turner & Newall*, 964 F.2d 159 (2nd Cir. 1992). Thus, in most situations, internal corporate investigations involving interviews with employees, ordered by corporate counsel, are clearly protected. A typical example would be a company charged with a sexually hostile working environment. There, the internal investigation would necessarily involve interviews with corporate employees with firsthand knowledge about information they had gained through one of their five senses regarding the alleged misconduct. These corporate employees will be more forthcoming if they are confident that their discussions with the interrogator, intended to be passed on to corporate counsel, will be protected by the privilege.

  These concerns are absent when the investigation involves the results of a mechanical measurement, such as the results produced by a measuring tape, a thermometer, or, as here, a set of scales. The mechanical device renders a measurement that is no way influenced by the fact that it will or will not be protected from disclosure. Thus, the Court has concluded that the objective facts, that is to say, the specific weight measurements disclosed by all internal audits and reweighs, are not protected by the privilege.

  That having been said, the court agrees with the Defendants that all comments leading up to, and all comments derived from the reweighs, as well as the conclusions reported to corporate counsel are protected by the privilege. For this reason, the court will not compel their disclosure. The Defendants are forewarned, however, that invocation of the privilege regarding the surrounding circumstances and communications means that they will not be

able to offer at trial communications, reports, etc. that were withheld because of the privilege claimed.

This Court previously has allowed the Government to conduct random audits at various locations maintained by the Defendants. To the extent that Plaintiffs might attempt to shield the results of their reweighs under a claim of attorney-client privilege or work product protection, the Court's position remains the same. That is to say, the Plaintiffs will be required to divulge the weight measurements revealed by their reweighs to the Defendants.

Although the Court has agreed with the Defendants that communications and reports relating to the reweighs are protected by the privilege, this does not foreclose the Plaintiffs from taking a deposition of the corporation Defendants pursuant to the provisions of Fed. R. Civ. P. 30(b)(6), seeking any explanation the Defendants wish to offer regarding any discrepancies that might be revealed by the reweighs.[4] This order also does not prohibit depositions of corporate employees, such as Dana Taylor, one of defendants' internal auditors, about routine record keeping and business records routinely maintained by the defendants independently of any internal investigation directed by corporate counsel after this action was filed.

---

[4] The Court hastens to add that it does not wish to imply that the reweighs have revealed or will reveal any discrepancies. In other words, the Court does not presume that any misconduct has occurred and this issue will remain to be decided by the fact finders in this case.

Perhaps this Court was not as clear as it could have been in July when setting out its position on the audits and reweighs. This order is an attempt to clarify the Court's position.

For the foregoing reasons, the motion to compel discovery is granted in part and denied in part, consistent with this opinion (ECF No. 124). The Court hereby overrules the Defendants' objections to the documents on Defendants' Privilege Log bearing Bates numbers COVAN–0083022 and COVAN–0083041–83042. The Court sustains Plaintiffs' objections as to all of the remaining eight entries on Defendants' Privilege Log.

IT IS SO ORDERED.

October 27, 2014
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge